# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PRECISION ROOFING OF N. FLORIDA INC. individually and on behalf of all others similarly situated, | Case No.: 3:20-cv-352-BJD-LLL |
| Plaintiff, | |
| v. | |
| CENTERSTATE BANK, | |
| Defendant. | |
| ANGELA DENISE GRANT, on behalf of herself and all persons similarly situated, | Case No.: 8:20-cv-01920-BJD-AAS (Administratively Closed) |
| Plaintiff, | |
| v. | |
| CENTERSTATE BANK, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND <u>FOR CERTIFICATION OF SETTLEMENT CLASS</u>

Plaintiffs, Precision Roofing of N. Florida Inc. and Angela Denise Grant, respectfully move for Preliminary Approval of the Settlement Agreement,[1] attached as **Exhibit A**, which will resolve all claims against Defendant, CenterState Bank (now known as SouthState Bank, N.A.), in the Actions. Preliminary Approval should be granted because the Settlement provides substantial and immediate relief for the Settlement Class. Specifically, Defendant has agreed to: (1) pay $2,650,000.00 into a cash Settlement Fund; (2) forgive and waive Uncollected Fees assessed to Accountholders, the amount of which will be calculated before Notice is sent; and (3) separately pay the Settlement Administration Costs. Additionally, there are non-monetary benefits. As a result of this Actions, Defendant modified its practice of assessing OD Fees and NSF Fees, resulting in past and future financial savings to the Settlement Class and to other accountholders who will better understand how and when the fees will be assessed. The terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Consequently, the Court should conclude that the Settlement meets the Fed. R. Civ. P. 23 standard and grant Preliminary Approval.

Accordingly, Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify the Settlement Class (3) approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1-2; (4) approve and order the opt-out and objection procedures; (5) appoint

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those defined in the Agreement.

Plaintiffs as Class Representatives; (6) appoint Kopelowitz Ostrow P.A. and KalielGold PLLC as Class Counsel; (7) continue the stay of the Actions pending Final Approval; and (8) schedule a Final Approval Hearing.

I.     **BACKGROUND**

  A.  **Procedural History**

The following summarizes the procedural history of the Actions that are the subject of the Agreement. On April 26, 2022, the Court consolidated the Actions. Dkt. 71. Before that, the Parties informally coordinated certain discovery efforts and participated in mediation after the Court denied motions to dismiss in both Actions.

### *Precision Roofing of N. Florida v. CenterState Bank*

On April 6, 2020, Plaintiff Precision Roofing filed a putative Class Action Complaint in the *Precision* Action asserting a claim for breach of contract, including breach of the covenant of good faith and fair dealing, challenging Defendant's assessment of APPSN Fees on debit card transactions. On July 7, 2020, Defendant moved to dismiss, which was fully briefed, following which Plaintiff filed several notices of supplemental authority. On February 22, 2021, the Court denied Defendant's Motion to Dismiss entirely. Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint on March 12, 2021. On September 3, 2021, following discovery, Plaintiff filed its Motion for Class Certification, supported by the report of Plaintiff's expert, Arthur Olsen. On October 25, 2021, Defendant filed its Response in Opposition to the Motion for Class Certification. With the Parties' agreement, and with the Court's approval, the *Precision* Action was stayed for mediation.

2

### *Grant v. CenterState Bank*

On August 18, 2020, Plaintiff Grant filed a putative Class Action Complaint in the *Grant* Action, asserting a claim for breach of contract, including breach of the covenant of good faith and fair dealing, challenging Defendant's assessment of multiple NSF Fees and/or OD Fees on the same ACH debit or check item. On September 25, 2020, Defendant moved to dismiss, which was fully briefed, following which Plaintiff filed several notices of supplemental authority. On July 16, 2021, the Court denied the Motion to Dismiss as to the breach of contract claim but dismissed the part of the claim seeking to enforce the covenant of good faith and fair dealing. Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint on July 20, 2021. On September 3, 2021, following discovery, Plaintiff filed her Motion for Class Certification, supported by Mr. Olsen's expert report. On October 25, 2021, Defendant filed its Response in Opposition to the Motion for Class Certification. With the Parties' agreement, and with the Court's approval, the *Grant* Action was stayed for mediation.

### *Practice Changes*

Defendant charged OD Fees on APPSN transactions. After the *Precision* Action was filed, Defendant ceased charging such fees. Thus, the APPSN Fee Class Period ends on May 31, 2020.

Similarly, Defendant changed its Account agreement effective August 22, 2020, after the *Grant* Action was filed, to specify the possibility of Multiple Fees on an item. Thus, Multiple Fee Class Period ends on August 21, 2020.

### *Discovery Efforts*

Class Counsel served interrogatories and document requests in the Actions and initiated several meet and confer conferences to discuss discovery responses and objections, and production of electronically stored information, damages data, and other documents and materials subject to discovery. Those efforts led to the production and Class Counsel's analysis of thousands of pages of documents (2,588 pages for the *Precision* Action and 3,710 pages for the *Grant* Action), sample account-level transaction data, and other information to evaluate the claims and defenses, to prepare for depositions taken in the case, and to move for class certification in the Actions.

Class Counsel worked with Mr. Olsen, the preeminent expert for bank account fee class action litigation. He analyzed sample transaction data produced to arrive at opinions as to methodologies to be employed to determine damages and class membership for the motion for class certification in each of the Actions.

The Parties also took depositions. Though not formally consolidated at the time, the Parties agreed that Defendant's Fed. R. Civ. P. 30(b)(6) designees should be deposed simultaneously in the Actions for efficiency. Matthew Bazo was deposed on June 25, 2021, and again on August 18, 2021. Don Stoltz was deposed on July 9, 2021. Mr. Olsen was deposed by Defendant on October 18, 2021.

### *Mediation*

The Parties proceeded to court-ordered mediation, simultaneously mediating both Actions with a well-regarded and experienced class action mediator, Rodney Max, of Upchurch Watson White & Max Mediation Group. Class Counsel prepared

a detailed, consolidated confidential mediation statement. In advance of mediation, Class Counsel conferred with the mediator, and separately with Defendant's counsel.

The Parties participated in a lengthy mediation session on November 10, 2021. Though they did not settle, they agreed to reconvene on December 13, 2021. That session resulted in an agreement to continue negotiations following the Parties' exchange of additional information. Thereafter, the negotiations progressed, and the Parties ultimately agreed to settle the Actions on February 25, 2022. Thereafter, the Parties negotiated and executed the Agreement dated March 30, 2022.

**B. Class Counsel's Investigation**

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Defendant. *See* Joint Declaration of Class Counsel ("Decl."), attached as ***Exhibit B***, ¶5. Class Counsel interviewed Plaintiffs and gathered documents and information about Defendant's alleged conduct and its impact on Accountholders, essential to Class Counsel's ability to understand Defendant's alleged conduct, the material Account agreement language, and potential remedies. *Id.*

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id.* ¶6. They are familiar with the claims as they have litigated and resolved many similar cases. *Id.* Class Counsel understand the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Settlement Class Member's damages. Class Counsel spent a significant amount of time analyzing data regarding Defendant's OD Fee and NSF Fee revenue with Mr. Olsen's assistance to analyze the damages. *Id.* ¶6.

Class Counsel, fully informed of the claims' merits, negotiated the Settlement while zealously advancing the position of Plaintiffs and the members of the Settlement Class and being fully prepared to continue to litigate rather than accept any settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id.* ¶7.

### C. <u>Summary of the Settlement Terms</u>

#### 1. The Settlement Class

The below Settlement Class includes opt-out classes under to Rule 23(b)(3):

<u>APPSN Fee Class</u>
All of Defendant's current and former Accountholders who, from April 6, 2015, through May 31, 2020, were charged OD Fees on APPSN Transactions.

<u>Multiple Fees Class</u>
All of Defendant's current and former Accountholders who, from August 18, 2015, through August 21, 2020, were charged Multiple Fees, including NSF Fees and OD Fees, on the same item.

Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

Agreement ¶68. Plaintiff Precision Roofing is the Class Representative for the APPSN Fee Class, and Plaintiff Grant is the Class Representative for the Multiple Fee Class, though both may be determined to be members of both Settlement Classes.

#### 2. Relief for the Benefit of The Settlement Class

##### a. Settlement Fund

Defendant will pay $2,650,000.00 into a Settlement Fund, allocated $1,457,500.00 (55%) for the APPSN Fee Class and $1,192,500.00 (45%) for the

Multiple Fee Class. *Id.* ¶99.c. That fund will pay: (a) Settlement Class Member Payments; and (b) attorneys' fees and costs awarded to Class Counsel. *Id.* ¶79.a. Defendant has no other payment obligations than Settlement Administration Costs.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive Settlement benefits. Instead, no later than 30 days after the Effective Date of the Settlement, Defendant and the Settlement Administrator will automatically distribute the Net Settlement Fund. *Id.* ¶99.c.iii.

### b. Distribution and Allocation of Settlement Class Member Payments

Settlement Class Members who are Current Accountholders will receive Account credits for their Settlement Class Member Payments, or by checks mailed by the Settlement Administrator if Defendant is unable to complete the credit. *Id.* ¶99.c.iii.(a). Past Account Holders will receive checks mailed by the Settlement Administrator. *Id.* ¶99.c.iii.(b). The Settlement Administrator shall make reasonable efforts to locate the proper address for any check returned undeliverable and will re-mail a check once to the updated address. *Id.* Members of the Settlement Class shall have 180 days to negotiate checks. *Id.* Any checks uncashed after 180 days shall be distributed pursuant to the provisions regarding residual funds. *Id.*

All Settlement Class Members entitled to a Settlement Class Member Payment will receive a pro rata distribution from the Net Settlement Fund based on the number of APPSN Fees and/or Multiple Fees the Settlement Class Member paid during the Class Periods applying the stated formulas. *Id.* ¶99.c. Because each Settlement Class

Member's distribution amount is dependent on his or her specific Account activity and the number of Settlement Class Members, it is not possible to determine the likely recovery of each Settlement Class Member until this calculation is performed.

### c. Disposition Of Residual Funds

Within 7 days after the deadline to cash Settlement Class Member Payment checks, any residual funds shall be distributed as follows: (a) first to the Defendant as reimbursement for the payment of Settlement Administration Costs it paid to the Settlement Administrator as of that date; and (b) second by check to all Settlement Class Members who either cashed their checks or received an Account credit, unless the residual amount is so small that it would be economically infeasible or impracticable to perform a secondary distribution. *Id.* ¶100. All secondary distribution costs shall be payable out of the remaining funds in the Net Settlement Fund. *Id.*

If the residual funds, after reimbursement to the Defendant for Settlement Administration Costs paid, is so small that a second distribution would be economically infeasible or impracticable, then, within 14 days after the deadline to cash checks sent to Settlement Class Members, Plaintiffs shall apply to the Court for a *cy pres* payment to the recipient agreed to by the Parties. *Id.* ¶101. Any remaining amounts resulting from uncashed checks shall be distributed to the *cy pres* recipient approved by the Court. *Id.* Similarly, if there are residual funds remaining 90 days following a secondary distribution, then Plaintiffs shall apply to the Court for a *cy pres* payment to the recipient agreed to by the Parties. *Id.* Any remaining amounts resulting

from uncashed checks shall be distributed to the *cy pres* recipient approved by the Court. *Id.*

### 3. Forgiveness of Uncollected Fees

Defendant shall forgive and waive all Uncollected Fees (APPSN Fees and Multiple Fees that were assessed, but not paid when an Account was closed and the APPSN Fees or Multiple Fees were charged off) no later than 30 days after the Effective Date. Defendant shall use best efforts to update any negative reporting to Chexsystems or credit reporting agencies with respect to Settlement Class Members who receive forgiveness of Uncollected Fees. *Id.* ¶99.c.iv.

### 4. Releases

In exchange for the Settlement benefits, all Settlement Class Members will be deemed to have released Defendant from the Released Claims. *Id.* ¶¶102-104. Additionally, Plaintiffs shall provide a separate general release to Defendant for $5,000.00, along with the closing of their Accounts following Final Approval. *Id.* ¶80.[2]

### 5. The Notice Program

The Settlement Administrator is Kroll Settlement Administration LLC, one of the leading United States administration firms. The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information Defendant has available about the Settlement Class. Decl. ¶44. The Notice Program is reasonably calculated to apprise

---

[2] No service awards are sought in light of the current law in the Eleventh Circuit prohibiting such awards to Class Representatives.

members of the Settlement Class of: a description of the Settlement's material terms; a date by which members of the Settlement Class may opt-out of the Settlement; a date by which Settlement Class Members may object to the Settlement and/or Class Counsel's application for attorneys' fees and costs; the Final Approval Hearing date; and the Settlement Website address where members of the Settlement Class may access the Agreement, Long Form Notice, and other related documents. Agreement ¶89. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice. Decl. ¶45. The Notice Program satisfies all applicable requirements of law, including Fed. R. Civ. P. 23 and constitutional due process. *Id.*

The Notice Program includes three Notice forms: (1) Email Notice to Current Accountholders; (2) Postcard Notice to Current Accountholders who have not agreed to receive statements by email, Past Accountholders, or Current Accountholders for whom Email Notice fails using the email address Defendant provided; and (3) detailed Long Form Notice that will be available on the Settlement Website and via U.S. mail upon request. Agreement ¶¶43, 53, 61, 93-94, 96 and Exhibits 1-2 thereto.[3]

The Long Form Notice will describe the procedures Settlement Class members must follow to opt-out of the Settlement or to object to the Settlement and/or Class Counsel's application for attorneys' fees and costs. Opt-outs must be postmarked no later than the last day of the Opt-Out Period. *Id.* ¶¶90-91. A valid objection must be mailed to the Clerk of the Court, Class Counsel, Defendant's counsel, and the

---

[3] A Spanish language translation of the Long Form Notice will be available too.

Settlement Administrator by the last day of the Objection Period and include: (a) the name of the Action; (b) the objector's full name, mailing address, telephone number, and email address (if any); (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector mails the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (f) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the mailed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (g) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval Hearing in support of the

11

objection (if any); (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶92.

The Settlement Website will include hyperlinks to the Agreement, Long Form Notice, Preliminary Approval Order, and such other documents as the Parties agree to post or the Court orders posted. It shall be established following Preliminary Approval and prior to the commencement of the Notice Program. *Id.* ¶¶72, 89.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries and to receive automated responses and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries. *Id.* ¶88.d. That line can also be used to request the Long Form Notice.

## 6. Settlement Administration

The Settlement Administrator is one of the leading class action settlement administrators in the United States. Its duties are as follows:

      a.     Use the name and address information for Settlement Class members provided by Defendant in connection with the Notice Program approved by the Court, for the purpose of mailing the Postcard Notice and sending the Email Notice and later mailing distribution checks to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for Defendant to make the payment by a credit to the Settlement Class Members' Accounts;

      b.     Establish and maintain a post office box for requests for exclusion from the Settlement Class;

      c.     Establish and maintain the Settlement Website;

      d.     Establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

e.    Respond to any mailed Settlement Class member inquiries;

f.    Process all requests for exclusion from the Settlement Classes;

g.    Provide weekly reports to Class Counsel and Defendant that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

h.    In advance of the Final Approval Hearing, prepare a declaration or affidavit to submit to the Court confirming that the Notice Program was completed, describing how the Notice Program was completed, providing the names of each Settlement Class member who timely and properly requested exclusion from the Settlement Classes, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

i.    Distribute Settlement Class Member Payments by check to Past Accountholder Settlement Class Members and Current Accountholder Settlement Class Members who are unable to receive credits;

j.    Provide to Defendant the amount of the Settlement Class Member Payments to Current Accountholders and instruct Defendant to initiate the direct deposit or credit of Settlement Class Member Payments to Current Accountholder Settlement Class Members;

k.    Pay invoices, expenses, and costs upon approval by Class Counsel and Defendant, as provided in this Agreement; and

l.    Any other Settlement-administration-related function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement Fund has been distributed.

*Id.* ¶88.

## 7. Settlement Termination

Defendant has the option to terminate this Agreement if 5% or more of the total Settlement Class Members opt-out. Defendant shall notify Class Counsel and the Court of its intent to terminate the Agreement within 10 days after the end of the Opt-Out Period, or the termination option shall be waived. *Id.* ¶108.

## 8. Attorneys' Fees and Costs

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Pursuant to Fed. R. Civ. P. 23(h), Class Counsel are entitled to request attorneys' fees of up to 33.33% of the Value of the Settlement, plus

reimbursement of reasonable costs incurred, to be paid from the Settlement Fund. Agreement ¶99.a; Decl. ¶25. The Parties negotiated and reached agreement on fees and costs only after agreeing on the Settlement's material terms. *Id.* Both are subject to this Court's approval and will compensate for the time, risk and expense Class Counsel incurred pursuing the Actions.

## II.    <u>ARGUMENT</u>

### A. <u>Legal Standard for Preliminary Approval</u>

Rule 23(e) requires judicial approval for the compromise of class claims. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "The public policy favoring settlement agreements is particularly strong in complex class action litigation where voluntary pretrial settlements obviate the need for expensive and time-consuming litigation." *Parker v. Stownledge Furniture, LLC*, No 8:21-cv-00740-CEH-AEP, 2022 WL 738591, at *2 (M.D. Fla. Feb 17, 2022).

Preliminary evaluation of proposed class action settlement determines whether the settlement is within the "range of reasonableness." 4 Newberg on Class Actions § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-

60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations involving arm's-length, informed bargaining with an experienced mediator and counsel support a preliminary finding of fairness. *See* Manual for Complex Litigation, Third, § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in the Eleventh Circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986. Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.[4]

Effective December 1, 2018, amendments to Rule 23(e)(2) added a mandatory but non-exhaustive set of similar final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[4] The fifth factor related to objections to the Settlement is not addressed here because, at the preliminary approval stage, notice has not yet been distributed.

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Preliminary Approval will allow Settlement Class members to receive Notice of the Settlement terms and of the Final Approval Hearing at which Settlement Class Members may be heard and the Parties may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id*. § 13.14. This Motion satisfies Plaintiffs' obligations under Rule 23(e)(1), as amended effective December 1, 2018.

**B.** **The Settlement Satisfies the Criteria for Preliminary Approval**

Each of the Rule 23(e)(2) and analogous *Bennett* factors weighs heavily in favor of Preliminary Approval. First, the Settlement is the product of good-faith, informed, and arm's length negotiations by competent counsel with a respected mediator's assistance, reached without collusion. Preliminary review of the fairness, adequacy, and reasonableness factors shows the Settlement fits well within the range of reason.

**1.** **This Settlement Is the Product of Good Faith, Informed and Arm's-Length Negotiations**

A class action settlement should be approved so long as a district court finds that the settlement is fair, adequate, and reasonable and is not the product of collusion

16

between the parties. *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005). Here, arm's-length negotiations, free of collusion between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action, aided by a respected mediator, resulted in the Settlement terms. Decl. ¶32; *Bennett*, 737 F.2d at 986. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases. Decl. ¶29. They zealously represented Plaintiffs throughout the Actions including, inter alia, defeating Defendant's motions to dismiss, conducting discovery that included review of thousands of pages of documents and electronic data as well as taking and defending depositions, and preparing motions for class certification. *Id.* The negotiations benefited from their years of experience and familiarity with the pertinent legal and factual issues, as well as other cases involving similar claims and defenses. *Id.* Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in extensive discovery, enabling them to gain an understanding of the evidence related to central questions in the Actions and prepared them for well-informed settlement negotiations. *Id.*; *see also Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery). Class Counsel were well-positioned to evaluate the claims' strengths and weaknesses, as well as the proper basis to settle them, from their prosecution of cases against numerous other banks involving identical

legal and factual issues and the ensuing settlements reached with those banks and credit unions. Decl. ¶30. Thus, Rule 23(e)(2)(B) is satisfied.

### 2. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

As noted, this Court may preliminarily review the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that Notice and a Final Approval Hearing is warranted because the Court is likely to approve the Settlement.

### a. Likelihood of Success at Trial

Plaintiffs and Class Counsel are confident in the strength of their claims but are pragmatic in their awareness of the Defendant's various available defenses and the risks inherent to continued litigation. Decl. ¶37. Plaintiffs avoided dismissal on both theories at the motion to dismiss stage. The success of Plaintiffs' claims, however, turned on these and other questions likely to arise again in the pending motions for class certification, at summary judgment, at trial, and on post-judgment appeal. *Id.* Under the circumstances, Plaintiffs and Class Counsel appropriately determined the Settlement benefits outweigh the gamble of continued litigation. Decl. ¶31. Even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief without further delays. Rule 23(e)(2)(C)(i) is satisfied.

### b. Range of Possible Recovery

When evaluating "the terms of the compromise in relation to the likely benefits

of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Wave Lengths Hair Salons of Florida v. Cbl & Associates Props.*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239522, Sat *28 (M.D. Fla. Apr. 24, 2019) "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $2,650,000.00 cash recovery is outstanding, given the complexity of the litigation and the significant risks and barriers that loomed without Settlement. Based on the analysis of Defendant's transactional data for mediation, the $2,650,000.00 Settlement Fund represents a substantial percentage of the Settlement Class's most-probable damages recovery if Plaintiffs and certified classes were successful in all respects through trial and on plenary appeal. Decl. ¶36. Defendant's forgiveness of Uncollected Fees, payment of all Settlement Administration Costs, and the practice changes further increase the Value of the Settlement. *Id.* There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiffs and the Settlement Class would have faced absent a settlement. The fact that

19

the Net Settlement Fund is being distributed pro rata based on each Settlement Class Member's Relevant Fees satisfies Rule 23(e)(2)(C)(ii) and (D).[5]

### c. Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the individual class members' claims, would be impracticable. Thus, the Settlement is the best vehicle for the Settlement Class to receive prompt and efficient relief to which they are entitled. Decl. ¶40. These considerations, and others noted above, militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs). Thus, Rule 23(e)(2)(C) is satisfied.

### d. Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Here, the Settlement was reached after extensive discovery and contested motions for class certification were filed and responded to. Decl. ¶30. Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success on class certification, at summary judgment, at trial, and in a post-judgment appeal. *Id.*

---

[5] The Court should also find that the Agreement's provision regarding Class Counsel attorneys' fees and costs (33.33% of the Value of the Settlement) likely satisfies Rule 23(e)(2)(C)(ii).

## C. Certification of the Settlement Class Is Appropriate

Plaintiffs seek provisional certification of the Settlement Class and authorization to send Notice to Settlement Class members. Generally, an action may be certified for class treatment for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Further, "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Petersen v Am. Gen. Life Ins. Co.*, No. 3:14-cv-100-J-39JBT], 2019 WL 11093815, at *2 (M.D. Fla. Apr. 4, 2019) (Davis, J.). The Settlement is an opt-out settlement meeting the four Rule 23(a) requirements and two Rule 23(b)(3) requirements, together with other requirements as to notice under Rule 23(e) and, ultimately, is "fair, reasonable and adequate," as required by Rule 23(e). As detailed below, the proposed Settlement Class and the proposed Settlement meet those standards. Pursuant to Rule 23(e)(1), the Court should conclude it is likely to certify the Settlement Class and approve the Settlement as fair, adequate and reasonable.

**1. Numerosity.** Rule 23(a)(1) requires a class to be sufficiently numerous such that it would be impractical to join all members. *Petersen*, 2019 WL 11093815, at *3. A class of more than 40 members is adequate. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); Numerosity is satisfied because each of the Settlement Classes consist of thousands of Accountholders, the exact number of which will be determined prior to sending Notice to the Settlement Classes, all of whom are readily ascertainable and precisely identifiable from Defendant's electronic records,

and joinder of all such persons is impracticable. Decl. ¶46.

**2. Commonality.** There are many questions of law or fact common to the Settlement Classes that can be answered for all "in one stroke," and will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Duke*s, 564 U.S. 338, 350 (2011) (quotation marks and citation omitted). Generally, commonality is a "low hurdle." *Petersen*, 2019 WL 11093815, at *4. Rule 23(a)(2) commonality is readily satisfied as there are multiple common questions of law and fact concerning the APPSN Fee and Multiple Fee practices alleged to have injured all class members in the same way, which would generate common answers central to the claims' viability if they were tried. Decl. ¶47.

**3. Typicality.** "Typicality under Rule 23(a)(3) turns on whether 'a sufficient nexus exists between the claims of the named representative and those of the class at large.'" *Petersen*, 2019 WL 11093815, at *4 (citation omitted). That "nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs need "possess the same interest and suffer the same injury as the class members"). Plaintiff Precision Roofing and Plaintiff Grant are typical of the APPSN Fee Class and Multiple Fee Class members, respectively. They were subjected to the same account fee practices, claim the same injuries, and will benefit from the Settlement relief. Decl. ¶48.

4. **Adequacy.** Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Adequacy serves to uncover conflicts of interest between the named parties and the class. *Petersen*, 2019 WL 11093815, at *5. The analysis is whether (1) substantial conflicts of interest exist between the representative and the class and (2) the representatives will adequately prosecute the action. *Id.* Plaintiff Precision Roofing's and Plaintiff Grant's interests are respectively coextensive and do not conflict with the interests of the APPSN Fee Class and Multiple Fee Class. They have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. Decl. ¶49. Further, Plaintiffs and the proposed Settlement Class are represented by qualified and competent Class Counsel with extensive experience and expertise prosecuting complex class actions, including similar account fee class actions. *Id.* ¶50. They devoted substantial time and resources to vigorous litigation. *Id.* They meet the Rule 23(g)(1)(A)-(B) requirements, and Rule 23(e)(2)(A) is also satisfied.

5. **Predominance and Superiority.** Rule 23(b)(3) is also satisfied for settlement purposes. Common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for thousands of Settlement Class members in a single, coordinated proceeding is superior to thousands of individual small value lawsuits addressing identical issues. *Petersen*, 2019 WL 11093815, at *6 (superiority focuses on efficiency).

The Court determines whether the common fact and legal issues are more

prevalent or important than those affecting individual members. *Id.* at \*5. Predominance is readily satisfied. Central liability questions common to all Settlement Class members substantially outweigh any possible issues individual to each member. For example, each Settlement Class member's relationship with Defendant arises from account agreements that are the same or substantially similar in all relevant respects to other members' Account agreements. Decl. ¶47. *See Sacred Heart Health Sys.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

For these reasons, the Court should certify the Settlement Class.

**D. <u>The Court Should Approve the Proposed Notice Program</u>**

Rule 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *See also Manual for Compl. Lit.* § 21.312. Best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Petersen*, 2019 WL 11093815, at \*8. "Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears,*

*Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quote marks omitted).

As explained above and in the Agreement, the Notice Program satisfies these criteria as it will (a) inform the Settlement Class of the Settlement's substantive terms; (b) advise members of their options for remaining part of the Settlement Class, for objecting to the Settlement and/or Class Counsel's fee and cost application, or for opting-out of the Settlement; and (c) disclose how to obtain additional information about the Settlement. The Notice Program is designed to reach an extremely high percentage of Settlement Class members by direct email and mail, the best possible form of notice, and exceeds the requirements of constitutional due process. Decl. ¶45. Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1-2.

## III.    <u>CONCLUSION</u>

Plaintiffs respectfully request Preliminary Approval of the Settlement. Attached hereto to as ***Exhibit C*** is a proposed Preliminary Approval Order that includes a table of the deadlines from the Agreement that are reasonably tied to the Final Approval Hearing date. The Court should schedule the Final Approval Hearing for November 7, 2022, or soon thereafter, to allow for Plaintiffs' expert to use Defendant's data to identify the Settlement Class members and their damages to create the Notice lists.

<u>RULE 3.01(g) CERTIFICATION</u>

The undersigned counsel for Plaintiffs hereby certify that they have conferred with counsel for Defendant regarding the subject matter of this Motion and that all Parties agree to the relief sought.

Dated: May 6, 2022                              Respectfully submitted,

*/s/ Jonathan M. Streisfeld*
Jeffrey Ostrow FBN 121452                       Jeffrey Kaliel (admitted *pro hac vice*)
Jonathan M. Streisfeld FBN 117447               **KALIELGOLD PLLC**
**KOPELOWITZ OSTROW P.A.**                       1100 15th St. NW 4th Floor
One West Las Olas Blvd., Suite 500              Washington, D.C. 20005
Fort Lauderdale, Florida 33301                  Tel: (202) 350-4783
Telephone: 954-525-4100                         jkaliel@kalielpllc.com
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Plaintiff and the Proposed Settlement Class*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 6, 2022, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ Jonathan Streisfeld*
Jonathan M. Streisfeld