## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| PRECISION ROOFING OF N. FLORIDA INC. individually and on behalf of all others similarly situated, | Case No.: 3:20-cv-352-BJD-LLL |
| Plaintiff, | |
| v. | |
| CENTERSTATE BANK, | |
| Defendant. | |

| | |
|---|---|
| ANGELA DENISE GRANT, on behalf of herself and all persons similarly situated, | Case No.: 8:20-cv-01920-BJD-AAS (Administratively Closed) |
| Plaintiff, | |
| v. | |
| CENTERSTATE BANK, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Precision Roofing of N. Florida Inc. and Angela Denise Grant, move for Final Approval[1] of the Settlement Agreement, which resolves all claims against Defendant, CenterState Bank, N.A. (now known as SouthState Bank, N.A.), in the Action, and for an attorneys' fees and costs award to Class Counsel. Final Approval should be granted because the Settlement provides substantial and immediate relief for the Settlement Classes. Specifically, Defendant has agreed to: (1) pay $2,650,000.00 in cash; (2) forgive and waive Uncollected Fees assessed to Accountholders; and (3) pay all Settlement Administration Costs; and (4) implement practice changes that will potentially save current Accountholders and future accountholders millions of dollars. The terms of the Settlement are fair, reasonable, and adequate and consistent with applicable case law in the Eleventh Circuit. Consequently, the Court should conclude that the Settlement meets the Fed. R. Civ. P. 23 standard and grant Final Approval.

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Classes; (3) finalize the appointments of Class Representatives and Class Counsel; (4) award Class Counsel attorneys' fees and reimbursement of costs; and (5) enter Final Judgment dismissing the Action with prejudice.

## I.  BACKGROUND

### A. Procedural History

The history of this Action is fully set forth in the Background section of the

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those defined in the Agreement, attached as *Exhibit A*.

Motion for Preliminary Approval, which is incorporated by reference to avoid burdening the Court with repetition. Dkt. 72 at § I. It is also set forth in the Joint Declaration of Class Counsel, attached as ***Exhibit B*** ("Decl."), ¶¶10-26. On June 21, 2023, this Court adopted the Report and Recommendations granting the Motion for Preliminary Approval, conditionally certified the Settlement Class, and set the Final Approval Hearing. Dkt. 76, 78, 79. Specifically, the Court found "that the Agreement proposed by the Parties is fair, reasonable, and adequate and likely to be approved at a Final Approval Hearing such that giving Notice is justified." Dkt. 79 at 2.

**B. <u>Summary of the Settlement Terms</u>**

### 1. **The Settlement Class**

The below Settlement Class includes opt-out classes under to Rule 23(b)(3):

<u>**APPSN Fee Class**</u>
All of Defendant's current and former Accountholders who, from April 6, 2015, through May 31, 2020, were charged OD Fees on APPSN Transactions.

<u>**Multiple Fees Class**</u>
All of Defendant's current and former Accountholders who, from August 18, 2015, through August 21, 2020, were charged Multiple Fees, including NSF Fees and OD Fees, on the same item.

Excluded from the Settlement Class is Defendant, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

Agreement ¶68. Plaintiff Precision Roofing is the Class Representative for the APPSN Fee Class, and Plaintiff Grant is the Class Representative for the Multiple Fee Class.

### 2. Relief for the Benefit of The Settlement Class

#### a. Settlement Fund

Defendant will pay $2,650,000.00 in cash into the Settlement Fund, which is allocated as follows: $1,457,500.00 (55%) for the APPSN Fee Class and $1,192,500.00 (45%) for the Multiple Fee Class. *Id.* ¶99.c. The Settlement Fund will pay: (a) Settlement Class Member Payments; and (b) attorneys' fees and costs awarded to Class Counsel. *Id.* ¶79.a. Settlement Administration Costs are paid by Defendant. *Id.* ¶99.b.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive Settlement benefits. Instead, Defendant and the Settlement Administrator will automatically distribute the Net Settlement Fund. *Id.* ¶99.c.iii. *See* Dkt. 72 at 7-9 (setting forth distribution process and disposition of residual funds).

### 3. Forgiveness of Uncollected Fees

Defendant shall forgive and waive all Uncollected Fees (APPSN Fees and Multiple Fees assessed, but not paid when an Account was closed and later charged off) no later than 30 days after the Effective Date. Defendant shall use its best efforts to update any negative reporting to Chexsystems or credit reporting agencies with respect to Settlement Class Members who receive forgiveness of Uncollected Fees. *Id.* ¶99.c.iv. The Uncollected Fees are in the process of being identified. Decl. ¶29.

### 4. Releases

In consideration for the Settlement benefits, all Settlement Class Members will release Defendant from the Released Claims. Agreement ¶¶102-104. Additionally,

Plaintiffs shall provide a separate general release to Defendant for $5,000.00, along with the closing of their Accounts following Final Approval. *Id.* ¶80.

### 5. The Notice Program

Pursuant to the Court's requirements in the Preliminary Approval Order, the Settlement Administrator has implemented the Notice Program. Decl. ¶34. The Notice Program was designed to and did provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. *Id*. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, the Fee Application, and their rights to opt-out of the Settlement Class or object to the Settlement. *Id*. *See also* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Admin. Decl.") ¶¶4-22, attached as ***Exhibit C***,.

### 6. Attorneys' Fees and Costs

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel request attorneys' fees of $906,634.99 equal to 33.33% of the Value of the Settlement ($2,650,000.00 Settlement Fund, and $70,177.00 for estimated Settlement Administration Costs), plus reimbursement of $80,710.64 for reasonable costs incurred. Agreement ¶99.a; Decl. ¶¶54-55. Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Decl. ¶56.

## II.  ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

As a prerequisite to directing Notice of the Settlement, the Court determined it would likely be able to approve the Settlement and certify the Settlement Class. Dkt. 76, 78, 79; *see* Rule 23(e)(1)(B). This Court should conclude that the Settlement is fair, reasonable, and adequate and grant Final Approval. *See* Rule 23(e)(2).

This Court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e), Committee Notes on Rules–2018 Amendment. The specific considerations include whether (1) the Settlement Class was adequately represented; (2) the Settlement was negotiated at arm's length; (3) the Settlement Benefits are adequate, accounting for the costs, risks, and delay of trial and appeal; distribute plan is effective, including the Claims Process; the terms governing attorney's fees; and any side agreements; and (4) whether Class Members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

"Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Indeed, "settlements are 'highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and

preventing lawsuits.'" *Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1114 (M.D. Fla. 2021) (quotation omitted). In conjunction with the Rule 23(e)(2) factors, exercising its discretion, the Court may analyze the Settlement using the so-called *Bennett* factors.[2] Final Approval here is warranted under the applicable factors.

### 1.  The Adequacy of Representation - Rule 23(e)(2)(A)

As this Court held in *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *1 (M.D. Fla. Oct. 22, 2019) (Davis, J.):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.* The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

*Id.* at *5 (footnote and additional citation omitted). Here, Plaintiffs are adequate representatives. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the APPSN Fee Class and Multiple Fee Class. Decl. ¶48. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.* Likewise, Class Counsel are experienced in complex class action litigation, including similar account fee class actions, and they devoted

---

[2] *See Bennett*, 737 F.2d at 986. The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*

Similar to Rule 23, a court should make findings that settlement "is not the product of collusion" and "that it is fair, reasonable and adequate." *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (citing *Bennett*). Courts have continued to weigh the *Bennett* factors after the 2018 amendments to Rule 23. *See In re Equifax*, 999 F.3d 1247, 1273 (11th Cir. 2021).

substantial time and resources to vigorous litigation. *Id.* ¶49.

### 2. The Settlement Was Negotiated at Arm's Length - Rule 23(e)(2)(B)

The Settlement was reached in the absence of collusion and is the result of good-faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶37. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in extensive discovery, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *Id.* ¶9; *see also Kuhr,* 530 F.Supp.3d at 1115 ("Class Counsel had an adequate information base upon which to conduct negotiations"). Class Counsel were well-positioned to evaluate the claims' strengths and weaknesses, as well as the proper basis to settle them, from their prosecution, and ensuing settlement, of numerous bank and credit union cases involving similar legal and factual issues. Decl. ¶8.

The Settlement was reached with the assistance of a well-respected and experienced mediator, Rodney Max. *Id. See Petersen,* 2019 WL 11093816, at *6 (involvement of a mediator indicates that negotiations protect and further class interests) (*quoting* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment; *citing Poertner v. Gillette Co.,* 618 F. App'x 624, 630 (11th Cir. 2015)). The extensive negotiations were conducted over several months and three formal sessions at arm's-length. Decl. ¶19. Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.* ¶33. For these reasons and

those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

### 3. The Adequacy of the Settlement Relief - Rule 23(e)(2)(C)

Class Counsel, a group with significant experience in class action litigation, strongly believe the Value of the Settlement is fair, reasonable, and adequate. Decl. ¶37; *see Bennett*, 737 F.2d at 986. The Court may rely upon the judgment of experienced counsel. *See, e.g., In re Equifax*, 999 F.3d at 1274 (trial judge "should be hesitant to substitute its own judgment for that of counsel") (internal quotations omitted). Rule 23(e)(2)(C)'s factors also show the Settlement is fair, reasonable, and adequate.

### a. The Settlement Benefits Are Outstanding

In determining a settlement's fairness given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* "[T]he court must remember that "compromise is the essence of settlement. A just result is often no more than an arbitrary point between competing notions of reasonableness." *Raines v. Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) (citing *Bennett*, 737 F.2d at 986) (internal annotations omitted). Fairness must be evaluated in light of "the likelihood of success on the merits, the complexity, expense,

and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement." *Id.* Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988), aff'd, 893 F.2d 347 (11th Cir. 1989).

Through this Settlement, Plaintiffs and the Settlement Class have achieved a recovery of approximately 60% of their total likely recoverable damages, without further risks or delays. Decl. ¶35. Additionally, the Settlement provides for additional benefits to the Settlement Class by forgiveness of Uncollected Fees, cessation of the APPSN practice, and Defendant paying Settlement Administration Costs separate and apart from the Settlement Fund. *Id.* ¶¶28-29. Thus, this Settlement provides an extremely fair and reasonable recovery in light of Defendant's defenses, as well as the challenging, unpredictable litigation path Plaintiffs would otherwise have continued to face. *Id.* ¶43.

### b.  The Costs, Risks, and Delay of Trial and Appeal

Class Counsel believe Plaintiffs had a strong case, but even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. Decl. ¶38. This Action involved several major litigation risks that loomed in the absence of settlement, including, but not limited to, class certification, summary judgment, *Daubert* motions, trial, and appellate review following a final judgment. *Id.* ¶39. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels

9

in favor of Final Approval. *Id.* ¶40. The uncertainties and delays from this process
would have been significant. *Id*.

Given the myriad risks attendant these claims, as well as the certainty of
substantial delay and expense from ongoing litigation, the Settlement cannot be seen
as anything except a fair compromise. *See, e.g.*, *Wave Lengths Hair Salons of Florida, Inc.,
v. CBL & Associates Properties, Inc., et al*, 216CV206FTMPAMMRM, 2019 WL
13037028, at *6 (M.D. Fla. Aug. 22, 2019) (significant time, expense, risk, and delay
of continuing case favored approving settlement). Even a successful trial might not
yield more favorable results than the Settlement terms already achieved, and recovery
might be delayed for years by an appeal. *See Lipuma v. American Express Co.*, 406 F.
Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood appellate proceedings could delay
class recovery "strongly favor[s]" approval of a settlement). All that is certain is that
with continued litigation, the putative class would face a notably longer wait before
receiving any potential recovery, if they received any recovery at all. Decl. ¶41. Thus,
in Class Counsel's experience and informed judgment, the Settlement represents an
excellent recovery for the Settlement Class, and the Value of the Settlement outweighs
risks and uncertainties of continued litigation. *Id.* ¶42; *see also In re Equifax*, 999 F.3d at
1273 ("Settlements also save the bench and bar time, money, and headaches");
*Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing
as weighing in favor of approving settlement).

### c.  The Effective Method of Distributing Relief and Processing Claims

Settlement Class Members do not have to submit claims or take any other

affirmative step to receive Settlement benefits. Decl. ¶31. Instead, Defendant and the Settlement Administrator will automatically distribute the Net Settlement Fund. Agreement, ¶99.c.iii. *See also* Dkt. 72 at 7-9 (setting forth distribution process and disposition of residual funds). The Settlement Administrator is highly qualified to manage the entire process. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1245 (S.D. Fla. 2016) (noting presence of an experienced administrator); Decl. ¶30.

### d. The Reasonable Terms Relating to Attorneys' Fees

Whether the attorneys' fees are reasonable on their own terms is a Rule 23(h) analysis. By contrast, under Rule 23(e)(2)(C)(iii), the question is not the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. Here, attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *See also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). Also, the Settlement, including disbursement of the Settlement Fund to Settlement Class Members, is not contingent on approval of the attorneys' fee award to Class Counsel. Agreement ¶ 99.a. Subject to the Court's consideration of a detailed fee application, *see* §II.D., *infra*, the proposed attorneys' fees award is also fair.

### e. The Agreements Identified Pursuant to Rule 23(e)(3)

Rule 23(e)(3) states "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties' agreements are all in the Agreement, including the $5,000.00 to each Plaintiffs for their additional general releases and their Account closures.

### 4. The Equitable Treatment of Settlement Class Members Relative to Each Other - Rule 23(e)(2)(C)

Each APPSN Fee Class and Multiple Fees Class member is eligible to receive the same benefits as other members of their respective Settlement Class. Thus, the proposed Settlement treats all Settlement Class members equitably. Agreement ¶ 99.c.

### 5. The Opinions of Class Counsel, Plaintiffs, and Absent Settlement Class Members Favor Approval of the Settlement-Bennett

Class Counsel strongly endorse the Settlement. Decl. ¶37. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060. *See also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight") (citations omitted).

There is no opposition to the Settlement. As of October 5, 2023, there have been no opt-outs and no objections. Admin. Decl. ¶20. This is another indication that the Settlement Class is satisfied with the Settlement. Even if an objection(s) is made before

the deadline, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002); *see Dunbar v. Symmetry Mgmt. Corp.*, 819CV00715CEHTGW, 2021 WL 4935787, at *2 (M.D. Fla. Feb. 26, 2021) (low opt-out and objection rates favor final approval).

**B. <u>Certification of the Settlement Class Is Appropriate</u>**

Plaintiffs seek final certification of the Settlement Class. Generally, an action may be certified for class treatment for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Further, "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Petersen v Am. Gen. Life Ins. Co.*, No. 3:14-cv-100-J-39JBT], 2019 WL 11093815, at *2 (M.D. Fla. Apr. 4, 2019) (Davis, J.). The Court conditionally certified the Settlement Class, Dkt. 79, and there is no reason to deviate from that ruling, and Plaintiffs respectfully request the Court finally certify it.

**1.     Numerosity.** Rule 23(a)(1) requires a sufficiently numerous class such that joinder of all is impracticable. *Petersen*, 2019 WL 11093815, at *3. A class of more than 40 members is adequate. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). The 22,745 Settlement Class members who were readily ascertainable and precisely identifiable from Defendant's records proves numerosity, and joinder of all such persons is impracticable. Decl. ¶53.

**2. Commonality.** Generally, Rule 23(a)(2) commonality is a "low hurdle."

*Petersen*, 2019 WL 11093815, at *4. There are many questions of law or fact common to the Settlement Classes that can be answered for all "in one stroke," and will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Duke*s, 564 U.S. 338, 350 (2011) (quotation marks and citation omitted). Those common questions of law and fact concerning the APPSN Fee and Multiple Fee practices alleged to have injured all class members in the same way, which would generate common answers central to the claims' viability if they were tried. Decl. ¶47.

**3. Typicality.** "Typicality under Rule 23(a)(3) turns on whether 'a sufficient nexus exists between the claims of the named representative and those of the class at large.'" *Petersen*, 2019 WL 11093815, at *4 (citation omitted). *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (nexus established where claims arise from "the same event or pattern or practice and are based on the same legal theory."). Plaintiffs are typical of their respective APPSN Fee Class and Multiple Fee Class members as they were subjected to the same account fee practices, claim the same injuries, and will benefit from the Settlement relief. Decl. ¶50.

**4. Adequacy.** Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The adequacy analysis is whether (1) substantial conflicts of interest exist between the representative and the class and (2) the representatives will adequately prosecute the action. *Petersen*, 2019 WL 11093815, at *5. Plaintiff Precision Roofing's and Plaintiff Grant's interests are respectively coextensive and do not conflict with the interests of the APPSN Fee Class and

Multiple Fee Class. They have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. Decl. ¶48. Further, Plaintiffs and the proposed Settlement Class are represented by qualified and competent Class Counsel with extensive experience and expertise prosecuting complex class actions, including similar account fee class actions, and they devoted substantial time and resources to vigorous litigation. *Id*. ¶49. They meet the Fed. R. Civ. P. 23(g)(1)(A)-(B) requirements, and Rule 23(e)(2)(A) is also satisfied.

**5. Predominance and Superiority.** Rule 23(b)(3) is also readily satisfied because common factual and legal issues predominate over individualized issues, *Petersen*, 2019 WL 11093815, at *5, and resolution of common issues for thousands of Settlement Class members in a single, coordinated proceeding is superior to thousands of individual small value lawsuits addressing identical issues, *id.* at *6 (superiority focuses on efficiency). Central liability questions common to all Settlement Class members substantially outweigh any possible issues individual to each member. For example, each Settlement Class member's relationship with Defendant arises from account agreements that are the same or substantially similar in all relevant respects to other members' Account agreements. Decl. ¶52. *See Sacred Heart Health Sys.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

**C. The Notice Program Was Completed and Satisfied Due Process and Rule 23**

In addition to having personal jurisdiction over Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement

Class because they received the Notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23 that make sure settlement class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice process mechanics are within the Court's discretion, subject to broad reasonableness standards imposed by due process.

Here, following the Court's approval of the Notice Program, the Settlement Administrator directed notice to the Settlement Class via direct mail and/or email. Admin. Decl. ¶¶11-14. A Long Form Notice was also available to Settlement Class members on request and posted on the Settlement Website. *Id.* ¶15. To ensure notice reached as many Settlement Class members as possible, the Settlement Administrator performed reasonable address traces for the initial Postcard Notice and to re-mail any Postcard Notices returned undeliverable. *Id.* ¶¶16-17. All of the notices included important Settlement information, including how to opt-out or object, and where to find more information about the Action or to contact Class Counsel. *Id.* ¶5. The Notice fully apprised Settlement Class members of their rights. Additionally, the Notice Program was designed to satisfy due process considerations. *Id.* ¶21. As Rule 23 requires, the Notices generally described the Settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard, and the Notices contained all of the critical information required to apprise Settlement Class members of their rights. Decl. ¶34. Thus, the Notice Program is adequate and provided

sufficient detail to allow Settlement Class members with adverse viewpoints to come

forward and be heard.

The Federal Judicial Center states that a notice plan that reaches 70% of class

members is one that reaches a "high percentage" and is within the "norm." Admin.

Decl. ¶18. Here, notice reached approximately 92.6% of Settlement Class Members.

*Id*. Notice to the Settlement Class here was the best notice that is practicable and is

equivalent or superior to notice campaigns approved in similar class actions.

### D. Attorneys' Fees and Costs Should Be Approved

Consistent with recognized class action practice and procedure, Class Counsel

respectfully request an award of attorneys' fees of $906,634.99, which is equal to

33.33% of the Value of the Settlement ($2,650,000.00 Settlement Fund, and $70,177.00

for estimated Settlement Administration Costs):

> When using the percentage-of-the-fund approach, courts compensate class
> counsel for their work in extracting non-cash relief from the defendant in a
> variety of ways. When the non-cash relief can be reliably valued, courts often
> include the value of this relief in the common fund and award class counsel a
> percentage of the total fund.

*In re: Checking Account Overdraft Litig.,* 1:09-MD-02036-JLK, 2013 WL 11319243, at

*13 (S.D. Fla. Aug. 2, 2013) (collecting authority); Decl. ¶54. [3] Thus, the attorneys'

fee amount accounts for additional monetary benefits inuring to the Settlement Class.

Class Counsel also request reimbursement of $80,710.64 for litigation costs

incurred to prosecute the Action and for the Settlement. Decl. ¶55. Class Counsel and

---

[3] The Value of the Settlement also includes substantial savings from Defendant's cessation of the
APPSN Fees. Agreement ¶99.a. Class Counsel is not requesting the attorneys' fee award be measured
based on inclusion of the value of that prospective relief.

Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id*. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel's request is appropriate, fair, and reasonable and respectfully should be approved by the Court.

**1.  The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts*, 2015 WL 6751061, at *10 (citation omitted) "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District all recognize that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id*. (citations omitted). "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I*, 946 F.2d at 771. Courts also recognize that appropriate fee awards in cases such as this encourage

redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). The fee request falls within this accepted range.

2.  **Application of the Camden I Factors Supports the Requested Fee.**

The Eleventh Circuit has provided factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)   the time and labor required;
(2)   the novelty and difficulty of the relevant questions;
(3)   the skill required to properly carry out the legal services;
(4)   the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)   the customary fee;
(6)   whether the fee is fixed or contingent;
(7)   time limitations imposed by the clients or the circumstances;
(8)   the results obtained, including the amount recovered for the clients;
(9)   the experience, reputation, and ability of the attorneys;
(10)  the "undesirability" of the case;
(11)  the nature and the length of the professional relationship with the clients; and
(12)  fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.

These twelve factors are guidelines and not exclusive.[4] The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* at 775.

a.  **The Claims Against Defendant Required Substantial Time and Labor.**

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Decl. ¶57. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the factual claims against Defendant, and also expended resources researching and

---

[4] "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).

developing the legal claims at issue. *Id.* Extensive time and resources were also dedicated to conducting discovery, including both issuing, reviewing and responding to written discovery and document production. *Id*. Class Counsel also expended significant resources researching and developing the arguments presented in opposition to Defendant's motions and briefs, and briefing class certification. *Id.*

Settlement negotiations consumed additional time and resources. *Id.* ¶58. The multiple mediation sessions and subsequent settlement discussions required substantial preparation and damage analysis. *Id.* Finally, a significant time was devoted to negotiating and drafting of the Settlement and the preliminary approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. *Id.* All of this work consumed a substantial amount of time. *Id*. Class Counsel will also spend time with Settlement administration after Final Approval. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* ¶59. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* The time and resources Class Counsel devoted to prosecuting and settling this Action readily justify the requested fee. *Id.*

### b. The Issues Involved Were Novel and Difficult and Required the Skill of Highly Talented Attorneys.

This Court witnessed the quality of Class Counsel's legal work, including briefing motions to dismiss and motions for class certification before the Parties mediated and reached the proposed Settlement, conferring a substantial benefit on the Settlement Class, facing significant litigation obstacles. *Id.* ¶60. Class Counsel's work

21

required the acquisition and analysis of a great amount of facts and law. *Id.*

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure. *Id.* ¶61. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. *Id.* The record demonstrates the complex and novel challenges which Class Counsel met at every juncture. *Id.* Notably, no case challenging APPSN Fees or Multiple Fees has been tried to judgment yet. *Id.*

To Class Counsel's quality of representation, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). Defendant was represented by extremely capable counsel who are worthy adversaries. Decl. ¶62.

### c. Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. The Value of the Settlement is outstanding, given the complexity of the litigation and the significant risks and barriers that loomed without Settlement. Based on the analysis of Defendant's transactional data for mediation, the Value of the Settlement represents a substantial percentage of the Settlement Class's

most probable damages recovery if Plaintiffs and certified classes were successful in all respects through trial and appeal. Decl. ¶42. Defendant's payment practice changes further increase the Value of the Settlement, but Class Counsel is not seeking to increase attorneys' fees for these benefits. *Id*. There can be no doubt this Settlement is a fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable litigation path ahead absent settlement. *Id*. ¶43.

### d. The Claims Presented Serious Risk.

Prosecuting the Action was risky from the outset. Decl. ¶36. The Settlement is particularly noteworthy given the combined litigation risks. *Id*. While Plaintiffs avoided dismissal on both theories at the motion to dismiss stage, the success of Plaintiffs' claims, however, turned on these and other questions likely to arise again in the pending motions for class certification, at summary judgment, at trial, and on post-judgment appeal. *Id*. Under the circumstances, Plaintiffs and Class Counsel appropriately determined the Settlement benefits outweigh the gamble of continued litigation. Decl. ¶42. Success under these circumstances represents a genuine milestone. Consideration of the "litigation risks" factor under *Camden I*:

> [R]ecognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'"

*Sunbeam*, 176 F. Supp. 2d at 1336.

Given these risks, the Value of the Settlement is substantial in light of the complexity of the litigation and the significant risks and barriers that loomed in the

absence of Settlement. Any of these risks could easily have impeded, if not derailed, Plaintiffs' and the Settlement Classes' successful prosecution of these claims.

### e. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *Id.* ¶65. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested fee. Decl. ¶64. See *Behrens*, 118 F.R.D. at 548 (setting forth public policy rational).

The progress of the Action shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial expenses they advanced. Decl. ¶65. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### f. The Requested Fee Comports With Fee Awards in Similar Cases.

The 33.33% of the Value of the Settlement requested is within the range of fees

typically awarded in class actions in the Eleventh Circuit and in the Middle District.[5] It is well within the range of reason for attorneys' fees awards in similar bank and credit union account fee cases, a table of which is in the Declaration of Class Counsel. Decl. ¶66. Thus, the attorneys' fee requested is reasonable and should be awarded.

### 3. The Reasonable Litigation Cost Request Is Appropriate.

Class Counsel also request reimbursement for a total of $80,710.64 in litigation costs expenses. *Id.* ¶67. *See Petersen*, 2019 11039816, at *8 (reimbursing out-of-pocket expenses). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the Action and the Settlement, consisting of court fees, expert witness fees, deposition costs, court server fees, mediation expenses, and travel costs. Decl. ¶67.

### III. CONCLUSION

Plaintiffs respectfully request the Court grant the relief as set forth in the proposed Final Approval Order, attached hereto as ***Exhibit D***.

---

[5] *See e.g., Taylor v. Citizens Telecom Services Co., LLC*, 584 F. Supp. 3d 1101, 1104 (M.D. Fla. 2022) (awarding one-third of gross settlement fund in attorneys' fees and expenses); *Parker*, 2022 WL 2452623, at *5 ("Common-fund attorney fee awards of one-third are consistent with the trend in this Circuit.") (quotation omitted); *Boyd v. Task Mgmt. Staffing Inc.*, 8:20-CV-780-T-35JSS, 2021 WL 2474433, at *2 (M.D. Fla. Apr. 30, 2021) ("request for one third of the common fund as a fee is reasonable and in line with *Camden I...*"); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (same); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit and Southern and Middle District fee awards); *see also Waters*, 190 F.3d 1291 (affirming award of 33.33 %).

## RULE 3.01(g) CERTIFICATION

Plaintiffs' Counsel certify they have conferred with Defendant's counsel regarding the subject matter of this Motion, and Defendant agrees to the relief sought.

Dated: October 6, 2023                                     Respectfully submitted,

*/s/ Jonathan M. Streisfeld*
Jeff Ostrow FBN 121452                          Jeffrey Kaliel (admitted *pro hac vice*)
Jonathan M. Streisfeld FBN 117447        **KALIELGOLD PLLC**
**KOPELOWITZ OSTROW P.A.**            1100 15th St. NW 4th Floor
One West Las Olas Blvd., Suite 500        Washington, D.C. 20005
Fort Lauderdale, Florida 33301               Tel: (202) 350-4783
Telephone: 954-525-4100                        jkaliel@kalielpllc.com
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 6, 2023, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ Jonathan Streisfeld*
Jonathan M. Streisfeld